**Colleen SHERMAN, Plaintiff,**

**v.**

**WAL–MART ASSOCIATES, INC., Defendant.**

**Civil Action No. 3:14–CV–04201–N**

United States District Court, N.D. Texas, Dallas Division.

Signed April 25, 2016

Matthew R. Scott, Javier Perez, Scott Perez LLP, Joe Kendall, Kendall Law Group LLP, Dallas, TX, for Plaintiff.

Nancy L. Waters, James David Hannagan, James N. Zoys, Geary Porter & Donovan PC, Addison, TX, for Defendant.

## ORDER

David C. Godbey, United States District Judge

This Order addresses Defendant Wal-Mart Associates, Inc.'s ("Walmart") motion to dismiss for lack of standing [15]. Because Plaintiff Colleen Sherman has a property interest in her employment discrimination claim, the Court denies the motion.

### I. ORIGINS OF THE DISPUTE

This case arises from Sherman's employment with Walmart and her alleged termination for racially discriminatory reasons. On October 24, 2014, Sherman filed this lawsuit alleging discrimination and wrongful termination against Walmart. See Pl.'s Original Pet. [1–3]. Walmart contends that Sherman should be judicially estopped from pursuing her claim because she failed to disclose it during her bankruptcy.

Sherman filed for bankruptcy pursuant to Chapter 13 of the Bankruptcy Code on June 30, 2013. Def.'s App. 50–84 [16–1, 16–2, 16–3]. A few months later, on January 14, 2014, Walmart terminated Sherman's employment. See Pl.'s Original Pet. 2. Sherman testified that, at the time of her termination from Walmart, she thought she might have a claim against Walmart for discrimination. Def.'s App. 22. Sherman consulted with her bankruptcy counsel on or about January 15, 2014, regarding her potentially discriminatory termination. See Pl.'s App. 183–84 [23–5]. He advised her to find an attorney. See id. at 184. Sherman spoke with three separate attorneys, "all of whom told [her] they could not help [her], that Wal-

Mart was too tough, or that [she] would not get anything." *Id.*

On January 29, 2014, Sherman moved to convert her bankruptcy from Chapter 13 to Chapter 7. Def.'s App. 128–32 [16–4]. The bankruptcy court approved the conversion, and on or about February 5, 2014, Sherman filed amended bankruptcy schedules. *See id.* at 41–49, 136–44. Sherman declared that she had no "[o]ther contingent or unliquidated claims" of any nature at the time. *Id.* at 138. On or about April 10, 2014, Sherman met with the Equal Employment Opportunity Commission ("EEOC") to discuss her charges of racial discrimination against Walmart. Pl.'s App. 177 [23–4]. The EEOC told Sherman her circumstances "[did] not support an allegation of discrimination in violation of the laws administered by EEOC." *See id.* On May 1, 2014, Sherman located her current counsel, who agreed to represent her, and they filed a Charge of Discrimination with the EEOC. *See* Pl.'s App. 185; Def.'s App. 39. The bankruptcy court discharged Sherman on May 23, 2014. Def.'s App. 149 [16–5].

On October 24, 2014, Sherman filed this lawsuit alleging discrimination and wrongful termination against Walmart. Pl.'s Original Pet. 1. Walmart asserted estoppel on November 20, 2014. *See* Def.'s Original Answer [1–8]. Sherman and Walmart mediated the lawsuit on September 25, 2015. *See* Alternative Dispute Resolution Summary [17]. On November 3, 2015, Sherman moved to reopen her bankruptcy. Pl.'s App. 147–48 [23–3]. On December 9, 2015, the bankruptcy court reopened Sherman's bankruptcy, and on December 14, 2015, Sherman filed an amended schedule of assets that included the current lawsuit. Pl.'s App. 161–76.

Walmart now moves to dismiss the lawsuit under Federal Rule of Civil Procedure 12(b)(1) for lack of standing. Sherman opposes the motion, or in the alternative, asks the Court to require the trustee of Sherman's bankruptcy estate to be substituted as the real party in interest.

## II. RULE 12(B)(1) STANDARD

Under the Constitution, a federal court may decide only actual "Cases" or "Controversies." U.S. CONST. art. III, § 2. A court properly dismisses a case where it lacks the constitutional power to decide it. *Home Builders Ass'n of Miss., Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir. 1998). "The justiciability doctrines of standing, mootness, political question, and ripeness all originate in Article III's 'case' or 'controversy' language." *Choice Inc. of Tex. v. Greenstein,* 691 F.3d 710, 715 (5th Cir.2012) (quoting *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 352, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006)) (internal quotation marks omitted). "Standing and ripeness are required elements of subject matter jurisdiction and are therefore properly challenged on a Federal Rule of Civil Procedure 12(b)(1) motion to dismiss." *Roman Catholic Diocese of Dallas v. Sebelius,* 927 F.Supp.2d 406, 415–16 (N.D.Tex. 2013) (Boyle, J.) (citing *Xerox Corp. v. Genmoora Corp.,* 888 F.2d 345, 350 (5th Cir.1989); *WesternGeco L.L.C. v. Ion Geophysical Corp.,* 776 F.Supp.2d 342, 350 (S.D.Tex.2011)).

A dismissal for lack of subject-matter jurisdiction is warranted when "it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle the plaintiff to relief." *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir.2001). "In general, where subject matter jurisdiction is being challenged, the trial court is free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case." *Montez v. Dep't of Navy,* 392 F.3d 147, 149 (5th Cir.2004). "Lack of subject matter jurisdiction may

be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming*, 281 F.3d at 161. Sherman, as the party asserting jurisdiction, bears the burden of proving that the Court has jurisdiction. *See id.*

### III. THE COURT DENIES THE MOTION TO DISMISS

Walmart urges the Court to dismiss Sherman's action for lack of standing because she has no property interest in her claim of employment discrimination. Walmart contends that Sherman's claim belongs to her bankruptcy estate and, to the extent that Sherman previously represented that her claim did not belong to the bankruptcy estate, she should be judicially estopped from asserting her interest in this case.

■■ "The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Reed v. City of Arlington*, 650 F.3d 571, 573–74 (5th Cir.2011) (internal quotation marks and citation omitted). To determine whether judicial estoppel applies, courts look for three elements: (1) the party against whom judicial estoppel is sought has asserted a legal position that is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently. *Id.* at 574. Because judicial estoppel is an equitable doctrine, "the Supreme Court has refused to 'establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel,' stating instead that different considerations 'may inform the doctrine's application in specific factual contexts.'" *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749–50, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)). In the bankruptcy context, "judicial estoppel must be applied in such a way as to deter dishonest debtors, whose failure to fully and honestly disclose all their assets undermines the integrity of the bankruptcy system, while protecting the rights of creditors to an equitable distribution of the assets of the debtor's estate." *Id.*

■■ Judicial estoppel is unwarranted in this case. To begin, the Court agrees that Sherman's representation to the bankruptcy court during her Chapter 13 bankruptcy that she had no contingent or unliquidated claims was inconsistent with her current position. Property of the bankruptcy estate in a Chapter 13 action includes property "that the debtor acquires after the commencement of the case but before the case is closed, dismissed or converted. . . ." 11 U.S.C. § 1306(a)(1). As a result, "Chapter 13 debtors have a continuing obligation to disclose post-petition causes of action." *Flugence v. Axis Surplus Ins. Co. (In re Flugence)*, 738 F.3d 126, 129 (5th Cir.2013). "[D]ebtors have a duty to disclose to the bankruptcy court notwithstanding uncertainty" because "[w]hether a particular asset should be available to satisfy creditors is often a contested issue." *Id.* Thus, a debtor must disclose a potential claim even if she does "not know all the facts or even the legal basis for the cause of action." *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir.1999).

In this instance, Sherman's discrimination claim arose during the pendency of her Chapter 13 bankruptcy. Sherman did not disclose the claim to the bankruptcy court; instead, she represented that her "ability to make regular plan payments have [sic] changed significantly since the date of filing due to loss of income" and

voluntarily converted the bankruptcy from Chapter 13 to Chapter 7. Def.'s App. 128. "Because [Sherman] had an affirmative duty to disclose her [employment discrimination] claim to the bankruptcy court and did not do so, she impliedly represented that she had no such claim." *In re Flugence*, 738 F.3d at 131.

But in order for the Court to apply judicial estoppel, the bankruptcy court must have accepted Sherman's position. "The judicial acceptance element 'ensures that judicial estoppel is only applied in situations where the integrity of the judiciary is jeopardized.'" *Allen v. C & H Distributors, L.L.C.*, 813 F.3d 566, 572–73 (5th Cir.2015) (quoting *Wells Fargo Bank, N.A. v. Oparaji*, 698 F.3d 231, 237 (5th Cir.2012)). "Absent judicial acceptance of the inconsistent position, application of the rule is unwarranted because no risk of inconsistent results exists." *Id.* at 572 (internal quotation marks and citation omitted). Here, there was no judicial acceptance because the bankruptcy court did not issue any order after Sherman's termination from Walmart. Rather, Sherman filed a voluntary notice of conversion of her bankruptcy from Chapter 13 to Chapter 7. A debtor has the right to convert a Chapter 13 bankruptcy to a Chapter 7 bankruptcy "at any time." 11 U.S.C. § 1307(a). "To effectuate a conversion, a debtor need only file a notice with the bankruptcy court." *Harris v. Viegelahn*, — U.S. —, 135 S.Ct. 1829, 1835, 191 L.Ed.2d 783 (2015) (citing FED. R. BANKR. P. 1017(f)(3)). "No motion or court order is needed to render the conversion effective." *Id.* at 1835–36. Because Sherman voluntarily converted her bankruptcy, the bankruptcy court never had an opportunity to accept her representation that she lacked a potential employment discrimination claim.

Once Sherman converted her bankruptcy case from one under Chapter 13 to one under Chapter 7, her post-petition claim no longer belonged to the estate. Converting a case from Chapter 13 to Chapter 7 "does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief." 11 U.S.C. § 348(a). After conversion, "property of the estate in the converted case shall consist of property of the estate, *as of the date of filing of the petition,* that remains in the possession of or is under the control of the debtor on the date of conversion." 11 U.S.C. § 348(f)(1)(A) (emphasis added). Thus, "in a case converted from Chapter 13, a debtor's postpetition earnings and acquisitions do not become part of the new Chapter 7 estate." *Harris*, 135 S.Ct. at 1837. Under these provisions, Sherman's post-petition claim against Walmart was not property of the estate for purposes of her Chapter 7 bankruptcy.

Because the employment discrimination claim belonged to Sherman personally after she converted the case to Chapter 7, she did not have an affirmative duty to disclose it. "A Chapter 7 debtor has no duty to amend his schedules to report a post-petition right to payment for which the bankruptcy estate may claim no interest." *In re Wakefield*, 312 B.R. 333, 338 (Bankr.N.D.Tex.2004). Walmart cites to many cases where the Fifth Circuit and other courts have held that a debtor must disclose potential causes of action to the bankruptcy court or else face judicial estoppel in a subsequent proceeding. *See, e.g., Love v. Tyson*, 677 F.3d 258, 263 (5th Cir.2012); *In re Superior Crewboats, Inc.*, 374 F.3d 330, 333 (5th Cir.2004); *Kamont v. West*, 83 Fed.Appx. 1, 3 (5th Cir.2003). However, none of these cases involved a potential claim that arose after the filing of a petition for Chapter 7 bankruptcy or

after the conversion of a case to Chapter 7. *But see Burnes v. Pemco Aeroplex, Inc.,* 291 F.3d 1282, 1288 (11th Cir.2002) (estopping plaintiff from pursuing claim that accrued during pendency of Chapter 13 bankruptcy that was later converted to Chapter 7 bankruptcy).

The only circumstance that would require the inclusion of Sherman's post-petition claim in the bankruptcy estate is if Sherman converted the case in bad faith. If a debtor converts a bankruptcy case in bad faith, "the property of the estate in the converted case shall consist of the property of the estate as of the date of conversion." 11 U.S.C. § 348(f)(2). The Bankruptcy Code does not define "bad faith," and the Fifth Circuit has yet to interpret the term as it appears in Section 348(f)(2). In *In re Mullican,* 417 B.R. 408, 414 (E.D.Tex.2009), the court stated that bad faith implies "not simply bad judgment or negligence, but rather ... the conscious doing of a wrong because of dishonest purpose or moral obliquity; it contemplates a state of mind affirmatively operating with furtive design or ill will." (internal quotation marks and citations omitted); *see also* BLACK'S LAW DICTIONARY 166 (10th ed.2014) (defining bad faith as "[d]ishonesty of belief, purpose, or motive"). At most, the facts here show that Sherman disclosed her potential employment discrimination claim to her bankruptcy counsel, counsel advised her not to disclose her claim to the bankruptcy court, and she received conflicting advice from attorneys and the EEOC regarding the viability of her claim. Sherman's actions do not suggest that she intended to deceive the bankruptcy court when she converted her case. Rather, due to Walmart's termination of her employment, she was simply unable to continue making payments under her Chapter 13 plan. The Court does not find evidence of bad faith on Sherman's part. *See, e.g., In re Castillo,* 508 B.R. 1, 9–11 (Bankr.W.D.Tex.2014) (finding no bad faith where debtor informed counsel of her father's death, counsel advised debtor not to disclose potential inheritance, and conversion was based on inability to make plan payments).

Sherman did not take any inconsistent position that the bankruptcy court later accepted. Finding no threat to the integrity of the judicial system, the Court declines to apply judicial estoppel in this case.

### CONCLUSION

Because Sherman has a property interest in her employment discrimination claim, the Court denies the motion to dismiss for lack of standing.