# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-30982

United States Court of Appeals
Fifth Circuit

**FILED**
March 22, 2019

Lyle W. Cayce
Clerk

United States of America, ex rel, RONALD BIAS,

     Plaintiff - Appellant

v.

TANGIPAHOA PARISH SCHOOL BOARD,

     Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:12-CV-2202

Before STEWART, Chief Judge, KING and OWEN, Circuit Judges.

PER CURIAM:[*]

The opinion previously filed in this case, *United States ex rel. Bias v. Tangipahoa Parish School Board*, --- F. App'x ---, 2018 WL 6431033 (5th Cir. Dec. 5, 2018), is WITHDRAWN. The following opinion is SUBSTITUTED therefor:

Ronald Bias filed a petition for Chapter 13 bankruptcy in May 2008. After the bankruptcy court confirmed his plan, but before he received a discharge, Bias filed this suit under the False Claims Act. He did not disclose

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-30982

this litigation to the bankruptcy court. The Tangipahoa Parish School Board moved for judgment on the pleadings, arguing that Bias's claim was barred by judicial estoppel. The district court granted the motion and Bias appealed. We AFFIRM.

## I.

In June 2009, the United States Marine Corps informed Ronald Bias that it had mistakenly allowed him to retire two years early. At the time, Bias was employed by the Tangipahoa Parish School Board (the "Board") as a senior instructor for Amite High School's Junior Reserve Officers' Training Corps ("JROTC"). The Marine Corps gave Bias the option of paying back the retirement funds he had erroneously earned or reenlisting for fifteen months to become eligible for retirement. Bias chose the latter. Bias was allowed to fulfill his reenlistment through his employment as a JROTC instructor. Bias alleged that he was told he would remain at Amite High School for the entirety of his fifteen-month reenlistment.

Bias contends that during this time Carl Foster, another JROTC instructor at Amite, submitted fraudulent requests for reimbursement to the Marine Corps. Bias alleges that he reported this behavior to Michael Stant, Amite's principal, and to the Marine Corps, but he was not taken seriously.

Shortly thereafter, the Marine Corps informed Bias that he could retire or be transferred to a New Orleans school district. Bias considered this action to be retaliatory and filed this lawsuit against the Board, Stant, and Foster on September 5, 2012. Bias asserted claims under the False Claims Act ("FCA"), including a *qui tam* action and a retaliation claim. He later amended his complaint to add claims under 42 U.S.C. § 1983 and state law.

The district court granted defendants' motion to dismiss Bias's FCA retaliation claim and § 1983 and state law claims, and the parties settled Bias's remaining FCA claim. Bias appealed the dismissal. We affirmed on all grounds

No. 17-30982

but one: we reversed the dismissal of Bias's FCA retaliation claim as against the Board and remanded the suit to the district court for further proceedings. *See United States ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, 816 F.3d 315, 328 (5th Cir. 2016).

On remand, the Board filed a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), arguing that judicial estoppel barred Bias's suit because he had not disclosed the cause of action in his Chapter 13 bankruptcy case. Bias had filed for Chapter 13 bankruptcy in the Eastern District of Virginia in May 2008. The bankruptcy court confirmed his plan on June 5, 2008—several years before Bias initiated this suit in September 2012. For the next five years, Bias made payments in accordance with the plan until he received a discharge on July 18, 2013. Bias did not amend his bankruptcy schedules to disclose this cause of action or otherwise inform the bankruptcy court of this litigation. Finding that judicial estoppel barred Bias's claim, the district court granted the Board's motion and dismissed the case. Bias timely appealed.

**II.**

We typically review de novo a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017). "But, because 'judicial estoppel is an equitable doctrine, and the decision whether to invoke it [is] within the court's discretion, we review for abuse of discretion' the lower court's decision to invoke [this doctrine.]" *Allen v. C & H Distribs., L.L.C.*, 813 F.3d 566, 572 (5th Cir. 2015) (alterations in original) (quoting *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 384 (5th Cir. 2008)). "A district court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." *Id.* (quoting *McClure v. Ashcroft*, 335 F.3d 404, 408 (5th Cir. 2003)).

3

No. 17-30982

## III.

The district court did not abuse its discretion in finding that judicial estoppel prevented Bias from pursuing his FCA retaliation claim.[1] A court may apply judicial estoppel if "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) the court accepted the prior position; and (3) the party did not act inadvertently." *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011). We discuss each element of the judicial estoppel analysis in turn.

## A.

We find that the first element of judicial estoppel is met in this case. Because he had an affirmative duty to disclose post-petition causes of action, Bias impliedly represented that he did not have such a claim when he failed to disclose this litigation to the bankruptcy court. Thus, Bias's position that he now has an FCA retaliation claim is "plainly inconsistent" with his earlier omission.

Bias and amici protest that he did not take an inconsistent position, reasoning that a Chapter 13 debtor has no obligation under the Bankruptcy Code or Rules to disclose post-confirmation causes of action. They contend that post-petition causes of action are not property of the bankruptcy estate because only the debtor's assets at the time of filing a petition for bankruptcy are the property of the estate—any assets acquired after the petition are the debtor's to keep. The only exceptions, they argue, are made under 11 U.S.C. § 541(a)(5) and Federal Rule of Bankruptcy Procedure 1007(h), which require debtors to

---

[1] Bias argues that the Board waived its judicial estoppel defense because it failed to plead it in its answer. "[T]he district court 'may invoke the [judicial estoppel] doctrine sua sponte' and therefore 'the court is not bound to accept a party's apparent waiver of the doctrine.'" *Allen*, 813 F.3d at 571 n.4 (quoting 18 *Moore's Federal Practice* § 134.34 (3d ed. 2015)). Therefore, the district court did not err in applying the doctrine here, regardless of whether the Board timely asserted the defense.

report inheritances, divorce settlements, and insurance proceeds to which the debtor becomes entitled within 180 days of the petition's filing date.

Bias and amici also urge us to distinguish this case from *Flugence v. Axis Surplus Insurance Co. (In re Flugence)*, 738 F.3d 126 (5th Cir. 2013). *Flugence* concerned a similar set of facts: the debtor brought suit after filing for Chapter 13 bankruptcy and receiving a plan confirmation. In finding that the debtor had a duty to disclose her cause of action, this court relied on the language in her confirmation plan, which "explicitly stated that the estate's assets would not revest in the debtor until *discharge*." *Id.* at 130 (emphasis added). In contrast, Bias points out, his plan stated that "[p]roperty of the estate shall revest in the debtor(s) upon *confirmation* of the plan (emphasis added)." Therefore, Bias reasons that he had no obligation to disclose this cause of action to the bankruptcy court because the litigation was not property of the estate.

Whether this litigation belongs to the estate misses the point. We have recognized that "Chapter 13 debtors have a continuing obligation to disclose post-petition causes of action." *Allen*, 813 F.3d at 572 (quoting *Flugence*, 738 F.3d at 129). Debtors must disclose post-confirmation assets to the bankruptcy court regardless of whether the assets are "treated as property of the estate or vested in the debtor." *Id.*; *see also Flugence*, 738 F.3d at 130 ("[O]ur decisions have settled that debtors have a duty to disclose to the bankruptcy court notwithstanding uncertainty."). This continuing obligation exists because the inclusion of assets in the bankruptcy estate "is often a contested issue, and the debtor's duty to disclose assets—even where he has a colorable theory for why those assets should be shielded from creditors—allows that issue to be decided as part of the orderly bankruptcy process." *Allen*, 813 F.3d at 572 (quoting *Flugence*, 738 F.3d at 130). Therefore, because Bias had an affirmative duty to disclose his FCA retaliation claim in the bankruptcy court but failed to do so,

No. 17-30982

he impliedly represented that he did not have such a claim. Accordingly, the first prong of the judicial estoppel inquiry is satisfied.[2]

Bias and amici make various equitable and policy arguments that this standard is overly rigid. But our precedent is clear: Chapter 13 debtors must disclose post-petition causes of action. *See, e.g.*, *Allen*, 813 F.3d at 572; *Flugence*, 738 F.3d at 129 n.1 ("The continuing duty of disclosure is a longstanding gloss required by our caselaw."); *Jethroe v. Omnova Sols., Inc.*, 412 F.3d 598, 600 (5th Cir. 2005) ("The obligation to disclose pending and unliquidated claims in bankruptcy proceedings is an ongoing one."); *Superior Crewboats, Inc. v. Primary P & I Underwriters (In re Superior Crewboats Inc.)*, 374 F.3d 330, 335 (5th Cir. 2004) ("The duty to disclose is continuous."). Bias and amici also argue that this "heightened disclosure" requirement is unduly burdensome, as it would require debtors to modify their bankruptcy plans each time they receive a paycheck or their property appreciates. These examples are inapt, however, because those paychecks and properties would already have been included in the debtor's original schedules. Thus, they would not need to be disclosed again. In contrast, Bias never disclosed this cause of action to the bankruptcy court. As the Eleventh Circuit has recognized, "The bankruptcy court is entitled to learn about a substantial asset that the court had not considered when it confirmed the debtors' plan." *Waldron v. Brown* (*In re*

---

[2] Bias also urges us to refrain from applying *Flugence* "retroactively," noting that *Flugence* was issued three months after his bankruptcy was discharged. But this argument is without merit because *Flugence* did not announce new law. *See Coastal Plains, Inc. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 208 (5th Cir. 1999) ("The duty of disclosure in a bankruptcy proceeding is a continuing one, and a debtor is required to disclose all potential causes of action." (quoting *Youngblood Grp. v. Lufkin Fed. Sav. & Loan Ass'n*, 932 F. Supp. 859, 867 (E.D. Tex. 1996))). Relatedly, because the duty to disclose post-confirmation causes of action is well established in this circuit, Bias and amici's argument that the court cannot infer an inconsistent statement from a debtor's silence "absent a clear and certain disclosure requirement" and that such an inference violates "due process of law" is also without merit.

No. 17-30982

*Waldron*), 536 F.3d 1239, 1245 (11th Cir. 2008). Thus, Bias's and amici's arguments are without merit.

**B.**

We find that the second element of judicial estoppel is also met in this case because the bankruptcy court accepted Bias's prior position by granting him a discharge. *See Flugence*, 738 F.3d at 130 (finding that "the bankruptcy court accepted the prior position by omitting any reference to the [cause of action] in the modified plan" because "[h]ad the court been aware of the claim, it may well have altered the plan"). Although Bias argues that the bankruptcy court could not have accepted his position because he never disclosed his FCA claim to the bankruptcy court, he did not present this argument to the district court. Therefore, we decline to address it for the first time on appeal. *In re Deepwater Horizon*, 857 F.3d 246, 251 & n.8 (5th Cir. 2017) ("[A]rguments not raised before the district court are waived and cannot be raised for the first time on appeal." (quoting *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007)).

**C.**

Finally, we find that the third element of judicial estoppel is satisfied. Judicial estoppel will not apply if the non-moving party's failure to disclose was inadvertent, meaning that he did not know of his inconsistent position or had no motive to conceal it from the court. *Jethroe*, 412 F.3d at 600-01. Bias has not met either prong here.

To show a lack of knowledge, it is not enough for the non-moving party to show that he did not know he had a duty to disclose his claim; he must demonstrate that he was "unaware of the facts giving rise to [the claim]." *Allen*, 813 F.3d at 573 (quoting *Flugence*, 738 F.3d at 130). Thus, Bias's argument that he was confused about the law and did not know that bankruptcy law required disclosure "is, according to our precedents, irrelevant." *Id.* (quoting

*Flugence*, 738 F.3d at 131). And Bias knew of the facts underlying his FCA retaliation claim during the bankruptcy proceedings—he filed this suit in September 2012, but he did not receive his discharge until July 2013. Therefore, Bias cannot establish inadvertence by showing that he did not know of his inconsistent position.

Nor has Bias demonstrated that he did not have a motive to conceal his claim from the court. When evaluating whether such a motive existed, we must consider whether Bias "had a 'motive to conceal [his] claim[]' during the pendency of the bankruptcy proceedings." *Id.* at 573-74 (quoting *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 263 (5th Cir. 2012)). Had the bankruptcy court known of his FCA claim, it may have modified his plan to require Bias to increase his payments, shorten the payoff period, or pay interest. *See U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 273 (5th Cir. 2015). Bias also admits that under the terms of his confirmation plan, any settlement or judgment in his favor would have to be disclosed to the bankruptcy court. Bias was therefore further incentivized to conceal his claim and prolong this litigation to avoid having to include it in his bankruptcy estate. Thus, Bias had a financial motive to conceal his claim.

Finally, Bias and amici make various equitable and policy arguments throughout their briefs, arguing that "the Fifth Circuit has begun using the doctrine [of judicial estoppel] as a per se rule as a perfunctory bludgeon with which to punish dishonest and honest debtors alike."[3] But for the purposes of

---

[3] Bias also urges us to "overrule" our precedent to require a more fact-specific inquiry into the debtor's motive, as the Eleventh Circuit did in *Slater v. United States Steel Corp.*, 871 F.3d 1174 (11th Cir. 2017) (en banc). But Bias and the Eleventh Circuit mischaracterize our caselaw. Prior to *Slater*, the Eleventh Circuit had allowed a court applying judicial estoppel "to infer intent to misuse the courts" from a debtor's nondisclosure. *Id.* at 1177. *Slater* overruled this precedent to require courts applying judicial estoppel to review the "totality of the facts and circumstances of the case." *Id.* at 1188. The Eleventh Circuit—in a sentence fragment in a footnote—characterized our caselaw as permitting an "inference that

our review, our inquiry is limited to whether the district court abused its discretion in applying this equitable doctrine. *Coastal Plains*, 179 F.3d at 205. Because we find that the district court's decision comports with our precedent and therefore did not rely on "erroneous conclusions of law," and we do not find that it relied on "clearly erroneous factual findings" or "misapplie[d] the law to the facts," *Allen*, 813 F.3d at 572, we decline to reverse for abuse of discretion.

Therefore, because all three elements of judicial estoppel are met, we find that the district court did not abuse its discretion in granting the Board's motion for judgment on the pleadings and dismissing Bias's FCA retaliation claim.

## IV.

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

a plaintiff who omitted a claim necessarily intended to manipulate the judicial system." *Id.* at 1189 & n.18. Summing up our caselaw in this manner is a hazardous undertaking, and one that the Eleventh Circuit got wrong. Unlike the Eleventh Circuit, our caselaw has always required courts to consider the facts before them in determining whether a debtor acted inadvertently. Take, for example, the very case the Eleventh Circuit cites in support of its erroneous proposition: *Superior Crewboats, Inc. v. Primary P & I Underwriters (In re Superior Crewboats Inc.)*, 374 F.3d 330 (5th Cir. 2004). There, we did not draw an "inference" from the debtors' omission that they had intended to "manipulate the judicial system." Instead, we considered the facts surrounding the debtors' nondisclosure, such as their knowledge of the claim; that they had initiated the suit "only months after filing for bankruptcy and requesting service of process during the pendency of the bankruptcy petition"; and their continued silence. *Id.* at 335. We have undertaken a fact-specific inquiry in this case as well. In sum, *Slater* altered the Eleventh Circuit's caselaw to make it more like our own precedent, not less. Therefore, we see no reason to consider this case en banc.